# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Ryan Hooks,
    Petitioner

    vs.

Case No. 1:07cv520
(Beckwith, C.J.; Hogan, M.J.)

Warden, Ross Correctional
Institution,
    Respondent

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Ross Correctional Institution in Chillicothe, Ohio, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of counsel from the Ohio Public Defender's Office. This matter is before the Court on the petition (Doc. 1), respondent's "Answer/Return Of Writ" with exhibits (Doc. 7), and petitioner's "traverse" in reply to the return of writ (Doc. 14).

## Procedural Background

On September 22, 2003, the Butler County, Ohio, prosecuting attorney filed two bills of information charging petitioner with three cocaine possession offenses in violation of Ohio Rev. Code § 2925.11(A). Specifically, in Case No. CR03-08-1232, petitioner was charged with one second-degree felony offense based on an incident occurring on July 18, 2003, and one third-degree felony offense based on an incident

occurring on July 28, 2003. (Doc. 7, Ex. 1);[1] in Case No. CR03-08-1278, petitioner was charged with another third-degree felony offense based on an incident occurring on August 20, 2003. (*Id.*, Ex. 2). Petitioner waived his right to trials by jury in the two cases, and on September 22, 2003, entered pleas of guilty to the three possession charges. (*Id.,* Exs. 3-6).[2]

Thereafter, on October 31, 2003, the Butler County prosecuting attorney filed another bill of information in Case No. CR03-10-1504, charging petitioner with a fourth cocaine possession offense, a felony of the fifth degree, based on an incident occurring on September 8, 2003. (*Id.,* Ex. 7). On the same date, petitioner pleaded guilty to that charge. (*Id.,* Ex. 8).

In separate entries filed on January 21, 2004, the Butler County Court of Common Pleas imposed the following sentences in the three criminal cases: (1) in Case No. CR03-08-1232, petitioner was sentenced to concurrent prison terms of six (6) years for the second-degree felony offense and four (4) years for the third-degree felony offense, with the sentence to run consecutively to a sentence imposed in a prior criminal case docketed in Butler County as Case No. CR03-07-0944;[3] (2) in Case No. CR03-08-1278, petitioner was sentenced to a three (3) year prison term with the sentence to run consecutively to the sentences imposed in Case Nos. CR03-07-0944 and CR03-08-1232; and (3) in Case No. CR03-10-1504, petitioner was sentenced to an eleven-month prison term with the sentence to run consecutively to the sentences imposed in Case Nos. CR03-07-0944, CR03-08-1232 and CR-03-08-1278. (*Id.,* Ex. 9-11).

With the assistance of new counsel, petitioner timely appealed to the Ohio Court of Appeals, Twelfth Appellate District. The appeal, which was consolidated, was dismissed on March 11, 2005, due to counsel's failure to file an amended brief

---

[1]In addition, in that case, two forfeiture specifications were attached to the first count, and another forfeiture specification was attached to the second count. (*See* Doc. 7, Ex. 1).

[2]In Case No. CR03-08-1232, petitioner also pleaded guilty to one of the forfeiture specifications attached to the first count. (*See* Doc. 7, Ex. 5).

[3]The prior case, Case No. CR03-07-0944, is not at issue here. In his "traverse" brief, petitioner states that he entered a guilty plea in that case on September 17, 2003 to fourth-degree felony charges of trafficking in cocaine in violation of Ohio Rev. Code § 2925.03(A)(1) and possession of cocaine in violation of Ohio Rev. Code § 2925.11(A), based on an incident that occurred on May 29, 2003. (*See* Doc. 14, p. 7).

in accordance with a court order issued January 24, 2005. (*See id.,* Exs. 15-17).

With the assistance of counsel from the Ohio Public Defender's Office, petitioner filed an application on June 7, 2005 with the Ohio Court of Appeals, Twelfth Appellate District, requesting that his appeal be reopened pursuant to Ohio R. App. P. 26(B). (*Id.,* Ex. 18). On September 7, 2005, the state appellate court granted petitioner's application for reopening. (*Id.,* Ex. 20). In a brief filed November 28, 2005, petitioner presented five assignments of error, including the following claims:

> 1. The trial court erred in imposing a non-minimum term of incarceration based on facts that were neither found by the jury nor admitted in a guilty plea by appellant. *Blakely v. Washington* (2004), 542 U.S. 296. . . .

> 2. The trial court erred [under *Blakely*] when it sentenced Mr. Hooks to consecutive terms of imprisonment.

(*Id.,* Ex. 21) (Third and Fourth Assignments of Error).

On March 20, 2006, the Ohio Court of Appeals sustained petitioner's *Blakely* claims, reversed the trial court's judgment and remanded the cases for re-sentencing. (*Id.,* Ex. 23). The court reasoned in pertinent part:

> In the recently decided case of *State v. Foster,* [845 N.E.2d 470 (Ohio 2006)], the Ohio Supreme Court held that certain sections of Ohio's sentencing code violated the Sixth Amendment and the U.S. Supreme Court's holding in *Blakely*. Among the sections the court found unconstitutional was R.C. 2929.14(B), which requires judicial findings before the imposition of a sentence greater than the minimum. . . . The court also found that R.C. 2929.14(E)(4), which requires judicial findings before the imposition of consecutive sentences, was unconstitutional. . . . Further, the court determined that provisions requiring judicial findings before the imposition of a maximum sentence, a "repeat violent offender" penalty enhancement, and a "major drug offender" penalty enhancement, were unconstitutional. . . .

> The *Foster* court found that all of the previously mentioned sentencing

provisions violated the Sixth Amendment because they required a judge to engage in fact finding before imposing a sentence greater than the maximum term authorized by a jury verdict or a defendant's admissions.... As the court stated, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." . . .

The *Foster* court determined that the above mentioned provisions were severable from the sentencing code. . . . Having severed the provisions, the court determined that judicial fact finding was no longer required prior to the imposition of a sentence within the basic prison ranges of R.C. 2929.14(A), the imposition of consecutive sentences, or the imposition of additional penalties for repeat violent offenders and major drug offender specifications. . . .

Due to the unconstitutional sentencing provisions that were applied, the *Foster* court determined that the four cases it was reviewing in its opinion in addition to "those pending on direct review," must be remanded for resentencing. . . . The court stated that the sentencing courts "shall consider" on resentencing those portions of the sentencing code unaffected by *Foster*, and impose any sentence within the appropriate felony range. . . .

Based on *Foster,* we sustain appellant's third and fourth assignments of error. The common pleas court's imposition of more than the minimum and consecutive sentences was based on R.C. 2929.14(B) and R.C. 2929.14(E)(4), which unconstitutionally require judicial fact finding before the imposition of those sentences. Accordingly, we remand this case for resentencing consistent with *Foster*. . . .

As stated in *Foster,* appellant is entitled to a new sentencing hearing, although he may stipulate to the existing record and waive the taking of additional evidence. . . . In resentencing appellant on remand, the common pleas court shall consider those portions of the sentencing code unaffected by *Foster,* and impose any sentence within the appropriate felony range.

4

As stated in [*State v. Mathis,* 846 N.E.2d 1 (Ohio 2006)], decided the same day as *Foster*, the portions of the sentencing code to be considered include the purposes of felony sentencing in R.C. 2929.11, and the seriousness and recidivism factors in R.C. 2929.12. . . . The court must also consider the record, any information presented at the sentencing hearing, any presentence investigation report, and any victim impact statement. . . . In accordance with *Foster,* the common pleas court has full discretion to impose a prison sentence within the statutory range, and is no longer required to make findings or give reasons for imposing maximum, consecutive, or more than the minimum sentences. . . .

(*Id.,* pp. 3-5) (citations omitted).

In remanding the matter for re-sentencing, the Ohio Court of Appeals further noted that "Ohio's sentencing scheme no longer has presumptive minimum terms," and that "[w]hile appellant may argue for a reduction in his sentences, nothing prevents the state from seeking greater penalties." (*Id.,* pp. 4-5 n.2-3).

Petitioner's counsel filed a motion for reconsideration, arguing that although the case should be remanded "in light of *Blakely,* . . . [r]emanding in light of *Foster* violates the Ex Post Facto and Due Process Clauses of the United States Constitution and directly contravenes *Foster.* . . ." (*Id.,* Ex. 24). On May 10, 2006, the Ohio Court of Appeals denied the motion for reconsideration. (*Id.,* Ex. 26).

Petitioner's counsel timely sought leave to appeal to the Ohio Supreme Court, asserting as the sole proposition of law that "a remand for a *Blakely* violation pursuant to *State v. Foster* is improper," and that "imposition of *Foster* procedures on remand violates the Sixth Amendment right to trial by jury, and the Ex Post Facto and Due Process Clauses of the Fifth and Fourteenth Amendments of the United States Constitution." (*Id.,* Ex. 27). On July 5, 2006, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional issue." (*Id.,* Ex. 29).

In the meantime, on May 22, 2006, petitioner was re-sentenced to the same terms of imprisonment that previously had been imposed following a hearing before the trial court on May 4, 2006. (*See id.,* Exs. 31-33).

Counsel from the Ohio Public Defender's Office filed the instant federal habeas

5

corpus petition on petitioner's behalf on July 3, 2007. (*See* Doc. 1). Petitioner alleges as the sole ground for relief that he "was sentenced by the State of Ohio to non-minimum, consecutive sentences in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution," and that the Ohio Supreme Court's decision in *Foster* to sever the unconstitutional "portions of Ohio's statutes that mandated minimum, concurrent sentences violated the due process and ex post facto clauses of the United States Constitution." (*Id.*, p. 5).

In the return of writ, respondent contends that petitioner has not exhausted his claim for relief because he did not appeal after he was re-sentenced. (Doc. 7, Brief, p. 7). Respondent further argues that, in any event, the petition should be denied because petitioner's claim has no merit. (*Id.*).

## OPINION

### A. Petitioner's Re-Sentencing For A *Blakely* Violation In Accordance With The Ohio Supreme Court's Decision In *Foster* Did Not Violate The Constitution's Ex Post Facto And Due Process Clauses

In the petition, petitioner essentially claims as the sole ground for relief that although the Ohio Court of Appeals correctly determined in the reopened appeal that a *Blakely* violation occurred when petitioner was sentenced in January 2004 to non-minimum, consecutive terms of imprisonment "based on facts never charged in the bills of information or formally admitted by [petitioner]" (*see* Doc. 14, p. 8), petitioner's rights under the Constitution's Ex Post Facto and Due Process Clauses were violated when, as ordered by the Ohio Court of Appeals, the trial court applied on remand the remedy adopted by the Ohio Supreme Court in *Foster* to cure the constitutional infirmity. (Doc. 1, p. 5; *see also* Doc. 14, pp. 8-18).

Respondent initially contends in the return of writ that petitioner has not exhausted this claim for relief, because he did not appeal the trial court's May 2006 decision on remand to impose the same terms of imprisonment that were originally imposed in January 2004. (Doc. 7, Brief, p. 7). Petitioner states, however, that he did in fact exhaust state court remedies because he asserted the same claim raised herein in his motion for reconsideration, which was denied by the Ohio Court of Appeals on May 10, 2006, as well as in his memorandum in support of jurisdiction to the Ohio Supreme Court on further appeal from the state appellate court's May 10, 2006 decision. (Doc. 14, p. 1). Petitioner also contends that even assuming, *arguendo,* he was required to appeal the trial court's May 2006 re-sentencing decision in order to

satisfy the exhaustion requirement, exhaustion should be excused in this case because the appeal remedy would be futile to pursue at this juncture. (*Id.*).

This Court is persuaded by petitioner's arguments. Petitioner has already brought the claim raised herein to the state appellate courts' attention by way of his motion to the Ohio Court of Appeals for reconsideration of its decision in the reopened appeal remanding the matter for re-sentencing in accordance with *Foster*, the denial of which was appealed further to the Ohio Supreme Court. (*See* Doc. 7, Exs. 24, 26, 27). Moreover, even assuming that petitioner could attempt another such appeal by filing a motion for delayed appeal pursuant to Ohio R. App. P. 5(A) from the trial court's May 22, 2006 re-sentencing Entry, the exhaustion requirement should be excused in this case because it would be futile for petitioner to pursue another avenue of relief after his claim has already been considered and rejected by the Ohio appellate courts. *See Castille v. Peoples,* 489 U.S. 346, 350-51 (1989); *Pillette v. Foltz,* 824 F.2d 494, 498 (6th Cir. 1987).[4]

In any event, under 28 U.S.C. § 2254(b)(2), an application for writ of habeas corpus may be denied on the merits notwithstanding any failure of the applicant to exhaust available state court remedies. Although there is a strong presumption in favor of requiring the exhaustion of available state court remedies, under the circumstances of this case and in light of the petitioner's own request to proceed to judgment, it is in the interests of the parties and judicial economy to promptly address the petition, which as discussed *infra* pp. 7-21, should be denied on the merits. *See Granberry v. Greer*, 481 U.S. 129, 135 (1987).

In this case, petitioner entered his guilty pleas in 2003 and was sentenced in January 2004 before *Blakely* or *Foster* were decided.[5] At that time, Ohio law provided

---

[4]In addition, as petitioner has pointed out in his "traverse" brief (*see* Doc. 14, p. 3), exhaustion of any remaining available remedy would be futile in this case given that the "Ohio courts have uniformly rejected *ex post facto* [and due process] challenges to the *Foster* decision." *See Rettig v. Jefferys,* _ F.Supp.2d _, No. 3:06cv2252, 2008 WL 1775255, at *11 (N.D. Ohio Apr. 15, 2008) (to be published) (and numerous state appellate court decisions cited therein).

[5]By that time, the Supreme Court had decided *Apprendi v. New Jersey,* 530 U.S. 466 (2000), which was relied on and extended in *Blakely*. In *Apprendi,* 530 U.S. at 490, the Supreme Court held that the Fourteenth Amendment right to due process and the Sixth Amendment right to trial by jury, taken together, entitle a criminal defendant to a jury determination that the

that a second degree felony carried a prison term of two to eight years, a third degree felony carried a prison term of one to five years, and a fifth degree felony carried a prison term of six to twelve months. Ohio Rev. Code § 2929.14(A)(2), (3), (5). Although petitioner was not sentenced to maximum terms of imprisonment for the various possession offenses in Case Nos. CR03-08-1232, CR03-08-1278, and CR03-10-1504, he was sentenced to more than the minimum term for each offense. In addition, although the two prison terms imposed in Case No. CR03-08-1232 were concurrent, the sentences imposed in each of the three cases were to run consecutively to one another as well as to the sentence imposed in prior Case No. CR03-07-0944.

Under Ohio's sentencing statute in effect at that time, the sentencing court was required to "impose the shortest prison term authorized for the offense ... unless ... (1) [t]he offender was serving a prison term at the time of the offense, or the offender previously had served a prison term[;]" or (2) "[t]he court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." Ohio Rev. Code § 2929.14(B). Consecutive sentences were permitted for convictions of multiple offenses "if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds . . . [t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." Ohio Rev. Code § 2929.14(E)(4)(c).

Although petitioner was sentenced before *Blakely* was decided in June 2004, by the time his application for reopening of the appeal was granted in September 2005, the Supreme Court had decided not only *Blakely,* but also *United States v.*

---

defendant is guilty beyond a reasonable doubt of any fact, other than the fact of a prior conviction, *which increases the penalty for a crime beyond the prescribed statutory maximum.* In so ruling, the *Apprendi* Court recognized a line of cases had developed from a statement made in a prior case, *McMillan v. Pennyslvania,* 477 U.S. 79, 93 (1986), that "there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact." The Court did not overrule the *McMillan* decision, which upheld a state's Mandatory Minimum Sentencing Act that "operat[ed] solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it." *See Apprendi,* 530 U.S. at 485-87 & n.13 (quoting *McMillan,* 477 U.S. at 88). Instead, the *Apprendi* Court limited *McMillan's* "holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict." *Apprendi,* 530 U.S. at 487 n.13.

*Booker,* 543 U.S. 220 (2005).[6] Moreover, on February 27, 2006, during the pendency of the reopened appeal, the Ohio Supreme Court issued its decision in *Foster,* holding certain provisions of Ohio's sentencing statute unconstitutional under *Blakely* and *Booker.*

Specifically, in *Foster,* the state supreme court ruled that, despite the fact that "[m]ost Ohio appellate courts have determined that *Blakely* is inapplicable" to Ohio's sentencing statutes, portions of the statutes had been "eviserated by *Blakely.*" *Foster,* 845 N.E.2d at 487-88. The *Foster* court found that "Ohio's sentencing statutes offend the constitutional principles announced in *Blakely* in four areas" mandating additional judicial fact-finding before the imposition of (1) more than the minimum term for those who have never served a prison term; (2) the maximum prison term; (3) consecutive prison terms; and (4) repeat-violent-offender and major-drug-offender penalty enhancements. *See id.* at 490-94.

Turning next to the question of what the appropriate remedy should be to bring about compliance with *Blakely,* the *Foster* court adopted the approach taken in *Booker* of severing from Ohio's sentencing statute the *Blakely*-offending portions of that statute and granting trial courts "full discretion to impose a prison sentence within the statutory range" without having to make findings or give reasons for imposing

---

[6]In *Blakely,* the defendant entered a guilty plea and, pursuant to the plea agreement, the state recommended a sentence within the standard range of 49 to 53 months. *Blakely,* 542 U.S. at 300. The trial judge rejected the recommended sentence and, instead, imposed an exceptional sentence of 90 months based upon his own finding, by a preponderance of the evidence, that the defendant had acted with "deliberate cruelty." *Id.* at 302-04. The Supreme Court reversed the defendant's sentence after finding the trial judge had enhanced the defendant's sentence beyond the statutory maximum based upon facts neither admitted to by the defendant nor found by the jury. *Id.* at 303. The Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* Importantly, the *Blakely* Court clarified that "the 'statutory maximum' . . . is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.*

In *Booker,* the Supreme Court extended the reasoning of *Blakely* to the federal sentencing guidelines; the Court held that the Sixth Amendment as construed in *Blakely* applied to the guidelines and thus any fact (other than a prior conviction) that increases a federal criminal defendant's sentence beyond the statutory maximum must be presented to a jury and proved beyond a reasonable doubt. *See Booker,* 543 U.S. at 244.

maximum, consecutive, or more than minimum sentences. *See id.* at 494-98. In so ruling, the court reasoned in pertinent part:

> Ohio's felony-sentencing structure may be severely wounded, but it is not fatally unsound. Our holdings are limited to areas where the statutes are *Blakely*-deficient. As a result, we must decide on a remedy. The question becomes, which remedy to apply?
>
> Since *Blakely* was decided, other states have examined their sentencing statutes and crafted remedies in response to the . . . error. These states have come to varying conclusions regarding the impact of *Blakely*, with no two supreme courts resolving the constitutional issues identically. The selected remedies fall into three broad categories: requiring sentencing juries, reducing sentencing to minimum terms until the state legislature acts, and severing the offending sections.
>
> In considering the Federal Sentencing Guidelines, the United States Supreme Court observed that the remedial question for a *Blakely* violation is to be resolved by looking to legislative intent. *Booker,* 543 U.S. at 246. . . . We note that the overriding goals of Ohio's sentencing scheme are to protect the public and punish the offender. S[enate] B[ill] 2 delegated the role of determining the applicability of sentencing factors to judges rather than to juries to meet these overriding goals. With this context in mind, we examine the possible remedies.
>
> One way to comply with *Blakely* is to provide for jury involvement in sentencing, as is done in capital cases. We have already held that a common pleas judge lacks jurisdiction to conduct a jury-sentencing hearing pursuant to the current statutes. *State ex rel. Mason v. Griffin,* . . . 819 N.E.2d 644 [(Ohio 2004)]. In *Griffin,* we granted a writ of prohibition to prevent the judge from conducting a sentencing hearing before a jury in a noncapital case. Certainly the General Assembly may enact legislation to authorize juries to find beyond a reasonable doubt all facts essential to punishment in felony cases, but it has not yet done so. We cannot say that, if faced with the *Apprendi* and *Blakely* decisions before passing S.B. 2, the General Assembly would have enacted such legislation. The General Assembly undoubtedly never anticipated that the judicial-finding requirements contained in S.B. 2 would be held

unconstitutional. We therefore reject this potential solution.

A second way to comport with *Blakely* would be to accept the criminal defendants' request that we interpret all the affected statutes as imposing only the minimum sentence for those entering prison for the first time and as preventing maximum sentences, consecutive sentences, and enhanced penalties such as repeat-violent-offender and major-drug-offender prison sentences, because all require judicial fact-finding. The criminal defendants . . . urge us to hold that for purposes of *Apprendi, Blakely,* and *Booker,* the "statutory maximum" in Ohio is the presumptive term–i.e., the minimum, current term–rather than the longest possible term. . . .

*The General Assembly provided a sentencing scheme of "guided discretion" for judges, intending that the required findings guide trial courts to select sentences within a range rather than to mandate specific sentences within that range. When mandatory sentences are intended, they are expressed. We, therefore, reject the criminal defendants' proposed remedy of presumptive minimum sentences, for we do not believe that the General Assembly would have limited so greatly the sentencing court's ability to impose an appropriate sentence.*

A third possibility for *Blakely* compliance is the severance remedy. *Booker* provided a blueprint for this remedy by converting the guidelines from mandatory to advisory through severance of the offending portions. Where sentencing is left to the unguided discretion of the judge, there is no judicial impingement upon the traditional role of the jury. . . .

As Justice Stevens clarified in *Booker,* "If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. . . . Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [Sentencing Reform Act of 1984] the provisions that make the Guidelines binding on district judges; it is that circumstance that makes

11

the Court's answer to the second question presented possible. For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Booker,* 543 U.S. at 234. . . .

\*\*\*\*

. . . .By vesting sentencing judges with full discretion, it may be argued this remedy vitiates S.B. 2's goals, particularly with respect to reducing sentencing disparities and promoting uniformity. Indeed, the dissenters in *Blakely* fretted that as a result of the *Apprendi* expansion, "[o]ver 20 years of sentencing reform are all but lost\*\*\*." 542 U.S. at 326 . . . (O'Connor, J., dissenting). It may well be that in the future, the Ohio Criminal Sentencing Commission may recommend *Blakely*-compliant modifications to the General Assembly that will counteract these, among other, concerns. Nevertheless, we are constrained by the principles of separation of powers and cannot rewrite the statutes.

Significantly, the severance remedy preserves "truth in sentencing," a fundamental element of S.B. 2. Because offenders will continue to be sentenced to a specific prison term, all parties . . . will know at the time of sentencing exactly what sanction the court is imposing on the defendant. Moreover, S.B. 2 established an entirely new framework for felony sentencing in Ohio, and the breadth of its reforms is wide. For example, the legislation recategorized numerous felonies, added various sentence-enhancing specifications, permitted courts to use residential and non-residential sanctions in lieu of a prison term, required a definite term of imprisonment, and created the option of a life sentence without the possibility of parole. The overwhelming majority of those reforms survive today's constitutional decision.

Severance also is the remedy that will best preserve the paramount goals of community safety and appropriate punishment and the major elements of our sentencing code. Removing presumptive terms and preserving the remainder of the sentencing provisions of the code will most effectively preserve the General Assembly's goal of truth in sentencing.... Our remedy does not rewrite the statutes but leaves courts with full discretion to impose a prison term within the basic ranges of

12

R.C. 2929.14(A) based upon a jury verdict or admission of the defendant without the mandated judicial findings that *Blakely* prohibits.

*Foster,* 845 N.E.2d at 494-96, 498-99 (footnotes omitted) (emphasis added).[7]

Because the Ohio Supreme Court held in *Foster* that its decision extended to cases then pending in the Ohio courts on direct review, *see id.* at 499, the Ohio Court of Appeals applied the *Foster* decision in the instant case both in determining that constitutional error had occurred in light of *Blakely* and *Booker* and in applying the *Booker* severance remedy, which allowed the trial court on re-sentencing full discretion to impose a sentence within the range established by state statute.

In challenging the state appellate court's decision in the instant case, petitioner essentially asks the Court to apply *Foster* to the extent he contends that the trial court's imposition of non-minimum, consecutive sentences violated *Blakely* and *Booker,* while at the same time arguing against *Foster'*s application to the extent the state supreme court adopted the severance remedy utilized in *Booker.* As one Ohio appellate court pointed out in rejecting the same argument raised in an analogous case, petitioner "essentially seeks the benefit of a state of law that never existed; he wants 'a sentence that comports with the Sixth Amendment requirements of *Booker* [and *Foster*], but wants to avoid the possibility of a higher sentence under the remedial holdings of *Booker* [and *Foster*].'" *State v. Paynter,* No. CT2006-0034, 2006 WL 3020319, at *5 (Ohio Ct. App. 5 Dist. Oct. 13, 2006) (unpublished) (quoting *United States v. Jamison,* 416 F.3d 538, 539 (7th Cir. 2005) (which joined other circuits in rejecting "an *ex post facto* claim based on the remedial holding in *Booker*" that was brought by a defendant challenging his federal sentence).

---

[7]The *Foster* court further determined that the severance remedy adopted by it satisfied Ohio law. *Foster,* 845 N.E.2d at 496-48. In so holding, the court stated:

Excising the unconstitutional provisions does not detract from the overriding objectives of the General Assembly, including the goals of protecting the public and punishing the offender. *See* R.C. 2929.11(A). The excised portions remove only the presumptive and judicial findings that relate to "upward departures," that is, the findings necessary to increase the potential prison penalty. We add no language, and the vast majority of S.B. 2, which is capable of being read and of standing alone, is left in place.

*Id.* at 497-98.

Under the Ex Post Facto Clause of the United States Constitution, a state is prohibited from passing a law that (1) " makes an action done before the passing of the law, and which was innocent when done, criminal;" (2) "aggravates a crime, or makes it greater than it was, when committed;" (3) "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed;" and (4) "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Rogers v. Tennessee,* 532 U.S. 451, 456 (2001) (quoting *Calder v. Bull,* 3 U.S. 386, 390 (1798) (Chase, J.)); *see also* U.S. Constit. Art. I, § 10. As petitioner apparently concedes (*see* Doc. 14, p. 11), Ex Post Facto Clause concerns are not triggered in the case-at-hand because "by its very text [the clause] applies only to a limitation on the powers of the legislature and not to judicial decisions." *McGhee v. Konteh,* No. 1:07cv1408, 2008 WL 320763, at *10 (N.D. Ohio Feb. 1, 2008) (unpublished); *see also Rogers,* 532 U.S. at 456, 460 (refusing to extend the strictures of the Ex Post Facto Clause to judicial decisions "through the rubric of due process").

Nevertheless, the Fourteenth Amendment's Due Process Clause does limit *ex post facto* judicial decision-making. *Rogers,* 532 U.S. at 456. Although the Due Process Clause does not incorporate the specific prohibitions of the Ex Post Facto Clause, retroactive judicial decision-making must comport with "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *Id.* at 459 (citing *Bouie v. City of Columbia,* 378 U.S. 347, 351, 352, 354-55 (1964)); *see also United States v. Barton,* 455 F.3d 649, 654 (6th Cir.) ("when addressing *ex post facto*-type due process concerns, questions of notice, foreseeability, and fair warning are paramount"), *cert. denied,* 127 S.Ct. 748 (2006).

Here, petitioner is unable to prevail on any claim that he lacked sufficient notice or "fair warning," because *Blakely, Booker,* and *Foster* did not change the elements necessary to convict petitioner of the drug possession charges, and petitioner was aware of the potential penalties he faced on such charges both before and after *Foster*. *Cf. McGhee, supra,* 2008 WL 320763, at *11. It is clear from the record that pre-*Foster,* when petitioner initially entered his guilty pleas and was sentenced, petitioner knew the maximum penalty for each offense and that sentences could run consecutively. Indeed, in the written plea entries signed by petitioner and counsel, petitioner stated that he understood the "maximum penalty" that could be imposed, which was specified as to each count; that "Prison Term is Mandatory/Consecutive" with respect to the second and third degree felony charges; and that "Prison Term is

14

Presumed Necessary" with respect to the second and third degree felony charges. (*See* Doc. 7, Exs. 5, 6, 8). Moreover, the then-applicable provisions of Ohio's sentencing statute provided sufficient notice to petitioner that the trial court had discretion to impose consecutive, non-minimum and even maximum sentences as long as the court made certain findings consistent with Ohio Rev. Code §2929.14(B), (C) and (E).[8]

Similarly, post-*Foster,* petitioner knew that the trial court retained the discretion to impose sentences within the statutory range, as well as consecutive sentences for multiple offenses. Therefore, both before and after *Foster,* petitioner was on notice and thus had "fair warning" of the potential penalties he faced and of the trial court's discretion to impose those penalties. As the district court reasoned in rejecting an Ohio prisoner's *ex post facto*-type due process claim challenging his re-sentencing under *Foster* to the same maximum prison term that had been imposed pre-*Foster*:

> Prior to *Foster,* the trial court made additional findings of fact consistent with Ohio Revised Code § 2929.14(C) and sentenced Petitioner to the maximum sentence available under Ohio Revised Code § 2929.14(A)(1): ten years. Under constitutional law as Ohio courts interpreted it at the time, Petitioner was not entitled to presentment to the grand jury, trial by jury or proof beyond a reasonable doubt as to the additional findings of fact required by Ohio Revised Code § 2929.14(C).

> Now, Petitioner alleges that his due process rights were violated because he has a right to presentment to a grand jury, trial by jury and proof beyond a reasonable doubt under the new law arising from *Foster*. After *Foster,* the elements of the crime for which Petitioner was charged were unaffected; therefore, he had no right to re-presentment to a grand jury or trial by jury as to the elements of the crime. Further, Petitioner's claim of a right to presentment to a grand jury and trial by jury regarding sentencing factors lacks merit because, following *Foster,* the trial judge maintains discretion under Ohio Revised Code § 2929.14(A)(1) to impose a sentence in the range of three to ten years for a first degree felony based upon facts admitted by the defendant or found by a jury. Therefore, the statutory maximum for *Apprendi* purposes is ten years, as Petitioner

---

[8] Indeed, it can be argued that at the time he was sentenced in January 2004, petitioner had no idea that these provisions contained in Ohio's sentencing statute later would be found to violate due process and the Sixth Amendment in light of *Blakely* and *Booker.*

believed it was before *Foster*.

Since the *Foster* decision does not change the elements necessary to convict Petitioner or the potential maximum sentence that Petitioner faced for a first degree felony, *Foster* does not raise an *ex post facto*-type due process violation. Moreover, the trial judge's application of *Foster* to Petitioner's case did not violate *Apprendi* because he did not sentence Petitioner beyond the statutory maximum.

*McGhee, supra,* 2008 WL 320763, at *11. *See also Rettig v. Jefferys,* _ F.3d _, No. 3:06cv2252, 2008 WL 1775255, at *11 (N.D. Ohio Apr. 15, 2008) (to be published) (rejecting *ex post facto* challenge to *Foster* remedy); *Collins v. Warden, Chillicothe Corr. Inst.,* No. 3:06cv256, 2008 WL 728390, at (S.D. Ohio Mar. 17, 2008) (unpublished) (Rice, J.; Merz, M.J.) (holding that "[w]hile Petitioner's original sentence violated *Blakely,* his new sentence [under the *Booker* remedy adopted in *Foster*] did not," and that "[n]othing in the United States Constitution calls such a sentence into question").[9]

Relying on the Supreme Court's decision in *Hicks v. Oklahoma,* 447 U.S. 343, 346 (1980), petitioner argues that the severance remedy adopted in *Foster* violates due process because Senate Bill 2 created a liberty interest for defendants convicted of felonies to receive the procedural protection of a presumptive minimum, concurrent sentence, which could not be deprived without due process of law. (Doc. 14, pp. 8-10).

In *Hicks,* the Supreme Court held that petitioner was deprived of a liberty interest without due process of law when he was sentenced by the jury pursuant to a state statute mandating the imposition of a 40-year prison sentence for "habitual offenders," which had been declared unconstitutional by the state court of appeals in another case decided after petitioner was convicted and sentenced. *Hicks,* 447 U.S. at 344-45, 347. The Court reasoned that the petitioner had the right established by state statute to have the jury fix his punishment, which was denied when the jury was instructed to impose the mandatory 40-year prison term established in the invalid "habitual offender" statute. *Id.* at 346-47.

---

[9]It is noted that the circuit courts have uniformly rejected *ex post facto* challenges to the application of advisory sentencing guidelines to federal criminal defendants who committed crimes prior to *Booker. See, e.g., Barton,* 455 F.3d at 653-57(and numerous cases cited therein).

In so ruling, the Court rejected the respondent's argument "that all that is involved in this case is the denial of a procedural right of exclusively state concern." *Id.* at 346. The Court explained:

> Where . . . a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion, ... and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State. . . . In this case, Oklahoma denied the petitioner the jury sentence to which he was entitled under state law, simply on the frail conjecture that a jury *might* have imposed a sentence equally as harsh as that mandated by the invalid habitual offender provision. Such an arbitrary disregard of the petitioner's right to liberty is a denial of due process of law.

*Id.* (emphasis in original).

*Hicks* is inapposite to the case-at-hand. In contrast to *Hicks*, petitioner in the instant case had no state-created right to have the jury fix his punishment or to any other guaranteed right at sentencing that rose to the level of a "liberty interest." In *Foster*, the Ohio Supreme Court pointed out that Senate Bill 2 delegated the role of determining the applicability of sentencing factors to judges rather than to juries, and that the "overriding goals of Ohio's sentencing scheme are to protect the public and punish the offender." *Foster*, 845 N.E.2d at 494-95. Moreover, most importantly, in rejecting the defendants' proposed remedy of limiting the trial court's ability to impose a sentence to only presumptive minimum (and thus also concurrent) sentences, the state supreme court stated that Ohio's legislature would not have "limited so greatly the sentencing court's ability to impose an appropriate sentence," and that in enacting Senate Bill 2, the Ohio legislature instead provided a "sentencing scheme of 'guided discretion' for judges, intending that the required findings guide trial courts to select sentences within a range rather than to mandate specific sentences within that range." *Id.* at 495. While recognizing, as petitioner contends, that one of the Ohio legislature's goals in enacting Senate Bill 2 was to promote uniformity and reduce sentencing disparities, the Ohio Supreme Court also emphasized in *Foster* that the "breadth of reforms" established by the legislation was "wide," and that a "fundamental element"

of the law was to "preserve[] 'truth in sentencing,'" as well as "to preserve the paramount goals of community safety and appropriate punishment and the major elements of [the] sentencing code." *Id.* at 498.

In *Foster,* the Ohio Supreme Court thus made it clear that the presumptive prison terms established as part of Senate Bill 2 did not rise to the level of a state-created liberty interest. *Cf. State v. Freeman,* No. 07CAA01-0001, 2008 WL 795381, at *4 (Ohio Ct. App. 5 Dist. Mar. 27, 2008) (unpublished) (the Ohio "legislature never mandated a mandatory minimum sentence upon *every* offender who had not previously served a prison term") (emphasis in original); *State v. Long,* No. 07 BE 27, 2008 WL 852077, at *1 (Ohio Ct. App. 7 Dist. Mar. 18, 2008) (unpublished) (and state cases cited therein) ("the presumptions of minimum or concurrent sentences, which were excised from the felony sentencing statutes, were only presumptions and not guarantees"); *State v. Mallette,* No. 87984, 2007 WL 530187 (Ohio Ct. App. 8 Dist. Feb. 22, 2007) (unpublished) (and state cases cited therein) (holding that "no vested [or accrued] right has been affected by *Foster,* as a "presumed sentence can be 'taken away' without the defendant's consent" and defendants "are not entitled to enforce or protect specific sentences prior to sentencing"). Instead, under Ohio law, the sentencing court retained the authority to impose non-minimum, consecutive sentences based on findings intended to guide the court's discretion in selecting a sentence within a range rather than to mandate a specific sentence within that range.[10]

The highest court of the state is the final arbiter of this state-law issue; therefore, "[w]hen it has spoken, its pronouncement is to be accepted by federal courts as defining state law." *West v. American Telephone & Telegraph Co.,* 311 U.S. 223, 236 (1940); *see also Hicks v. Feiock,* 485 U.S. 624, 629-30 & n. 3 (1988) (applying *West* standard in federal habeas case). This Court is bound by the state supreme court's interpretation of state law as reflected in Ohio's sentencing statute.[11]

---

[10]*Cf. Thomas v. Belleque*, No. CV 04-1600-ST, 2006 WL 3716773, at *1-2, 6 (D. Or. Dec. 12, 2006) (unpublished) (holding that the sentencing court's failure to consider imposing partially concurrent sentences in the erroneous belief that it lacked authority to do so did not violate the petitioner's right to due process under *Hicks,* because the petitioner "had no underlying state-created right to have a judge consider imposing a concurrent sentence").

[11]In contrast to *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 871 n.16 (2007), the *Foster* court's interpretation of the Ohio legislation did not amount to a modification of Ohio law "so as to align it with [the Supreme Court's] Sixth Amendment precedent[s]." If that were the case, as in *Cunningham,* the state supreme court's construction of the Supreme Court

Finally, petitioner contends that in light of the Supreme Court's recent decision in *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856 (2007), "a state court cannot apply the *Booker* severance [remedy] to state statutes in the manner that the Ohio Supreme Court applied *Booker* to Ohio's sentencing statutes" in *Foster.* (Doc. 14, pp. 15-18). The Court disagrees with this contention.

In *Cunningham,* 127 S.Ct. at 860, the Court evaluated the constitutionality of California's determinate sentencing law ("DSL"), under which an offense was punishable by one of three precise prison terms: a lower term of 6 years, a middle term of 12 years, or an upper term of 16 years. Under the DSL, the trial judge was required to sentence the petitioner to the middle prison term "unless there [we]re circumstances in aggravation or mitigation of the crime" as determined by the court based on certain facts established by a preponderance of the evidence. *See id.* at 861-62. The Supreme Court held that "[b]ecause circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the evidence, not beyond a reasonable doubt," . . . the DSL violates [the Sixth Amendment]" in light of *Apprendi, Blakely* and *Booker. Id.* at 868.

The Court stated that "[w]hile '[t]hat should be the end of the matter'" under *Blakely,* the California Supreme Court had held otherwise in another case based on the determination that the upper term of the three-tier system, as opposed to the middle term, qualified as "the relevant statutory maximum," and therefore, the "operation and effect" of the DSL was to "simply authorize[] a sentencing court to engage in the type of factfinding that traditionally has been incident to the judge's selection of an appropriate sentence within a statutorily prescribed sentencing range." *See id.* The Supreme Court stated that in so ruling, the California Supreme Court ultimately had "relied on an equation of California's DSL system to the post-*Booker* federal system," wherein the "level of discretion available to a California judge in selecting which of the three available terms to impose . . . appears comparable to the level of discretion that the high court has chosen to permit federal judges in post-*Booker* sentencing." *Id.* at 869-70.

The Supreme Court held that contrary to the California Supreme Court's determination, "our decisions from *Apprendi* to *Booker* point to the middle term specified in California's statutes, not the upper term, as the relevant statutory

---

precedents "in an endeavor to render them consistent with [Ohio] law" would not be entitled to deference by this Court.

maximum." *Id.* at 868, 871. Moreover, the Court found that the California Supreme Court's "attempted comparison [to the post-*Booker* federal system was] unavailing." *Id.* The Court reasoned in pertinent part:

> California's DSL does not resemble the advisory system the *Booker* Court had in view. Under California's system, judges are not free to exercise their "discretion to select a specific sentence within a defined range." *Booker,* 543 U.S. at 233. . . . California's Legislature has adopted sentencing triads, three fixed sentences with no ranges between them. Cunningham's sentencing judge had no discretion to select a sentence within a range of 6 to 16 years. His instruction was to select 12 years, nothing less and nothing more, unless he found facts allowing the imposition of a sentence of 6 or 16 years. Factfinding to elevate a sentence from 12 to 16 years, our decisions make plain, falls within the province of the jury employing a beyond-a-reasonable-doubt standard, not the bailiwick of a judge determining where the preponderance of the evidence lies.

> . . . .Because the DSL allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment. It is comforting, but beside the point, that California's system requires judge-determined DSL sentences to be reasonable. *Booker*'s remedy for the Federal Guidelines, in short, is not a recipe for rendering our Sixth Amendment case law toothless.

*Id.* at 870.

The Court went on to point out several states had modified "their systems in the wake of *Apprendi* and *Blakely* to retain determinate sentencing . . . by calling upon the jury–either at trial or in a separate sentencing proceeding–to find any fact necessary to the imposition of an elevated sentence." *Id.* at 871. The Court further noted: "Other States have chosen to permit judges genuinely 'to exercise broad discretion . . . within a statutory range,' which, 'everyone agrees,' encounters no Sixth Amendment shoal." *Id.* (quoting *Booker,* 543 U.S. at 233).

Here, as in *Booker,* and in contrast to *Cunningham,* Ohio's challenged sentencing scheme permitted the trial court to exercise discretion in the selection of an appropriate sentence within a range capped at a statutory maximum. As the

20

*Cunningham* Court indicated, by excising the provisions that rendered the scheme mandatory and thus permitting the sentencing court broad discretion to impose a sentence within the applicable statutory range, the *Foster* court adopted a remedy that, as in *Booker,* 542 U.S. at 233, "encounters no Sixth Amendment shoal."

Accordingly, in sum, the undersigned concludes that petitioner's rights under the Constitution's Ex Post Facto and Due Process Clauses were not violated when the trial court applied the remedy adopted by the Ohio Supreme Court in *Foster* in re-sentencing petitioner on remand from the Ohio Court of Appeals' decision in the reopened appeal. Therefore, petitioner is not entitled to relief based on the sole ground for relief alleged in the instant habeas petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should issue with respect to the claim alleged as the sole ground for relief in the instant habeas action, because the issues presented therein are "adequate to deserve encouragement to proceed further." *See Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis* at the close of this case, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation wouldbe taken in "good faith," and therefore **GRANT** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 7/1/08
cbc

Timothy S. Hogan
United States Magistrate Judge

J:\BRYANCC\2008 habeas orders\07-520denypet.Blakely-Fostersceverance.expostfacto-DP.wpd

21

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Ryan Hooks,
      Petitioner

    vs                    Case No. 1:07cv520
                             (Beckwith, C.J.; Hogan, M.J.)

Warden, Ross Correctional
Institution,
      Respondent

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254.  Any party may object to the Magistrate Judge's Report and Recommendation within **fifteen (15) days** after the date the Report and Recommendation is stamped as "filed" by the Clerk of Court. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).